IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| HARRY A. DANIELSON, M.D. § | | PLAINTIFF |
| § | | |
| v. § | | Civil Action No. 1:05cv270HSO-RHW |
| § | | |
| MEMORIAL HOSPITAL, ET AL. § | | DEFENDANTS |

**ORDER AND REASONS GRANTING
DEFENDANTS' MOTION TO DISMISS**

BEFORE THE COURT is a Motion to Dismiss filed March 21, 2006 [12-1], by Defendants Memorial Hospital and James R. Doty, M.D. [collectively referred to as "Defendants "] pursuant to FED. R. CIV. P. Rule 12(b)(6), in the above styled and numbered cause. Plaintiff responded [17-1] on April 7, 2007, and Defendants filed a Rebuttal [21-1] on April 17, 2007.  After due consideration of the submissions and the relevant law, it is the opinion of the Court that Defendants' Motion must be granted.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Dr. Harry A. Danielson, is a board-certified neurologist with staff privileges at Memorial Hospital at Gulfport ["MHG"].   Defendant, Dr. James Doty, is also a board-certified neurologist with staff privileges at MHG.   The facts giving rise to the claims asserted in the above-captioned cause surround a contract between Dr. Doty and MHG.

In June 2003, MHG lacked neurosurgery coverage in its Emergency Room.

As a result, MHG was placed on diversion for trauma cases so that any trauma cases requiring neurosurgery services were transported elsewhere.  In response to this predicament, the MHG Board of Trustees determined that a contract with a physicians' group for provision of neurosurgery services would benefit the community and its citizens.  Consequently, on November 10, 2004, MHG entered into an agreement with the Brain & Spine Institute, owned by Dr. Don Doty.  The contract contained the following exclusivity provision:

> <u>Exclusivity</u>.  MHG has determined that in order to ensure consistency and quality of neurosurgery services, the interests of its patients are best served by contracting with a group practice of qualified physicians to provide exclusive neurosurgery services for patients of the Hospital. Accordingly, during the term hereof, subject to the terms and conditions hereto and excepting any of those active, associate or consulting member(s) of the Hospital's Medical Staff with neurosurgery privileges as of the effective date of this Agreement (which physicians shall retain their respective appointment categories and privileges as of the effective date of this Agreement, with no increase in appointment categories or privileges during the term(s) of this Agreement), listed on Exhibit B, MHG grants to BSI the exclusive right to provide the professional component of all neurosurgery services performed at MHG.

Exclusive Agreement for Neurosurgery Services [12-1], att. as Ex. "A" to Defs.' Mtn. to Dismiss.

Plaintiff filed suit in Harrison County Chancery Court on April 22, 2005, seeking injunctive and declaratory relief as well as damages, and asserting the following claims: 1) violation of § 405.4 of the Minimum Standards for the Operation of Mississippi Hospitals; 2) violation of Miss. Code Ann. § 75-21-1, namely Mississippi Anti-Trust law; 3) violation of § 501(c)(3) of the Internal

Revenue Code; and 4) quasi-contract and breach of the duty of good faith, unjust enrichment, and tortious interference with business interest.  In addition, count four of Plaintiff's Complaint asserts a Complaint in Discovery claim.

On May 27, 2005, Defendants filed a Notice of Removal to this Court pursuant to 28 U.S.C. § 1441(a), asserting original federal question jurisdiction under 28 U.S.C. § 1331.  Thereafter on June 6, 2005, Defendants filed an Answer, followed by an Amended Answer on June 15, 2005.  Plaintiff filed a Motion to Remand on June 27, 2005.  The Court, by Memorandum Opinion and Order, denied the Motion on August 10, 2005. Ct. R. #9.  Defendants filed the instant Motion to Dismiss on March 21, 2006.  Plaintiff filed a Response in Opposition on April 7, 2006, and Defendants filed a Rebuttal on April 17, 2006.

## II. DISCUSSION

A.   Standard Of Review

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)(*citing McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992)). "[T]he court may not look beyond the pleadings in ruling on the motion." *Baker*, 75 F.3d at 197.  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff must provide the "grounds" of his "entitlement to relief," which requires more than labels and conclusions or formulaic recitations of the elements of a cause of action.  *See Bell Atlantic Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

"Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. To survive a motion to dismiss where the existence of an agreement is in question, the complaint must state enough factual matter [taken as true] to suggest that an agreement was made. *See id.* Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)*(overruled on other grounds)*).

At the outset, the Court notes that Plaintiff objects to the consideration of the Agreement entered into by the parties. Plaintiff contends that the Agreement does not accurately encompass the extent of the incentives offered by MHG to Dr. Doty. Pl.'s Resp. to Mtn. to Dismiss at p. 4 . Plaintiff argues that the Agreement does not comprise the entire incentive package and also does not constitute the final agreement that was executed by the parties. *See id.* at p. 4.

Defendants contend that, notwithstanding Plaintiff's arguments, Plaintiff's "ability to state a claim does not hinge upon a review of documents between MHG AND Dr. Doty." Defs.' Reb. at p. 4. Defendants submit that Plaintiff is aware that the "compensation was addressed in the Recruitment and Medical Director Agreement." *Id.*

The record indicates that the Agreement at issue was signed by MHG and Dr. Doty on November 10, 2004.  Exhibit B to this Agreement excepts Dr. Danielson and one [1] physician that he recruits from the exclusivity provision of the Agreement.  *See* Exs. "A" and "B" [12-2], att. to  Defs.' Mem. of Authorities in Supp. of Def.'s Mot. to Dismiss.

Where the Court considers matters outside the pleadings, Rule 12(b) requires that a motion to dismiss be treated as one for summary judgment.  *See Central Nat'l Bank of Waco v. FDIC*, 910 F.2d 1279, 1280 (5th Cir. 1990)("[w]here matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  FED. R. CIV. P. 12(b)(6)).  If the movant meets his burden by proving the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*citing Celotex Corp. v. Catrett*, 477 U. S. 317, 325 (1986)).  The nonmovant cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, the nonmovant must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists.  *See Celotex Corp.*, 477 U.S. at 324; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); FED. R. CIV. P. 56(e).

In the present case, there are matters outside the pleadings that have been submitted by Defendants; therefore, the instant Motion to Dismiss is more properly treated as one for summary judgment.

B.  Anti-Trust Claims Brought Pursuant to § 405.4 of Minimum Standards for Mississippi Hospitals and Plaintiff's Standing

Defendants move to dismiss Plaintiff's Complaint on the grounds that the Mississippi State Department of Health, as the administrative governing body for the regulation of hospitals, has addressed the issue of whether an exclusive contract between a hospital and physician for provision of specialized services violates § 405.4 of the Minimum Standards of Operation for Mississippi Hospitals. Defendants attach a letter from the Department of Health which in relevant part opines that: "[g]enerally, the Department does not consider the use of 'exclusive contracts' to be a violation of § 405.4 . . . ." Ex "D" [12-5], att. to Defs.' Mem. of Authorities in Supp. of Def.'s Mot. to Dismiss.

Plaintiff opposes dismissal of his Complaint on the grounds that §405.4 has never been applied or construed by a Mississippi court and has never been the subject of an actual case or controversy at any level - either administrative or judicial. Pl's. Resp. in Opp. to Mtn. to Dismiss at p. 7. Section 405.4 states as follows: "No applicant shall be denied medical staff privileges in any publicly owned hospital on the basis of any criteria lacking professional justification." Ex. "C" [12-4], att. to Defs.' Mem. of Authorities in Supp. of Def.'s Mot. to Dismiss. This

administrative regulation was promulgated by the Mississippi State Department of Health.  "Miss. Code Ann. § 41-9-17 provides that the agency responsible for the licensing of hospitals in the State adopt rules, regulations and standards for those hospitals. These rules and regulations are compiled in *Minimum Standards of Operation for Mississippi Hospitals.*" *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So.2d 790, 792  (Miss. 1995).

MHG is a community hospital that comes within the purview of section 41-13-10 of the Mississippi Code.[1]  MHG is likewise a subdivision of the state or municipal corporation thereof within the meaning of the Mississippi Constitution and statutory law.  *See Enroth v. Memorial Hospital at Gulfport,* 566 So.2d 202 (Miss.1990).  Section 41-13-35(5)(g) authorizes the Board of Trustees of a community hospital to contract:

> by way of lease, lease-purchase or otherwise, with any agency, department or other office of government or any individual, partnership, corporation, owner, other board of trustees, or other health care facility, for the providing of property, equipment or services by or to the community hospital or other entity or regarding any facet of the construction, management, funding or operation of the community hospital or any division or department thereof, or any related activity, including, without limitation, shared management expertise or employee insurance and retirement programs, and to

---

[1] "A '[c]ommunity hospital' shall mean any hospital, nursing home and/or related health facilities or programs, including without limitation, ambulatory surgical facilities, intermediate care facilities, after-hours clinics, home health agencies and rehabilitation facilities, established and acquired by boards of trustees or by one or more owners which is governed, operated and maintained by a board of trustees." Miss. Code Ann. § 41-13-10(c).

> terminate said contracts when deemed in the best interests of the community hospital;

Miss. Code Ann. § 41-13-35(5)(g).

This statute demonstrates "that the state legislature clearly contemplated anticompetitive conduct by (1) authorizing a hospital to enter an exclusive contract with a single individual to operate any aspect, division or department of its operations, . . .." *Martin v. Memorial Hosp. at Gulfport,* 86 F.3d 1391, 1399 (5th Cir. 1996).

The record indicates that at all relevant times, Plaintiff held medical staff privileges at MHG and was excepted from the contract between MHG and Dr. Doty. The record further indicates that MHG entered into a contract with Dr. Doty that was contemplated and permitted under the laws of the State of Mississippi. Plaintiff's anti-trust claims are not cognizable as a matter of law; therefore, Defendants' Motion must be granted.

C.   Plaintiff's Claims Pursuant to the Internal Revenue Code

In his Response, Plaintiff states that with regard to these claims: "federal statutes cited in his complaint do not provide for a private cause of action." Pl's. Resp. to Mtn. to Dismiss at p.13.   Because Plaintiff has admittedly asserted certain claims for which there is no recovery under 42 U.S.C. § 1320(a)-7b(b) and section 501(c)(3) of the Internal Revenue Code, these claims must be dismissed.   Finally, the Court notes that because Plaintiff was specifically referenced as excepted from

the terms of the Agreement, Plaintiff lacks standing to pursue claims relating to antitrust injury.  *See Martin, supra.*

D.  Breach of Duty of Good Faith, Quasi-Contract and Tortious Interference with Business Interest Claims

### 1. Quasi-Contract

Quasi-contractual liability such as promissory estoppel is based on the equitable principle that a person should not be allowed to unjustly enrich himself at the expense of another. *See Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp.2d 563, 574 (D.N.J. 2002).

"The first essential element of promissory estoppel is that the promisor has made a binding offer in the form of a promise.  This promise must be definite and certain so that the promisor should reasonably foresee that it will induce reliance by the promisee or a third party. A mere expression of future intention, however, does not constitute a sufficiently definite promise to justify reasonable reliance thereon." *Santoni v. Federal Deposit Ins. Corp.*, 677 F.2d 174, 179 (1st Cir. 1982)(citations omitted); *see also In re Phillips Petroleum Securities Litigation*, 881 F.2d 1236, 1250 (3rd Cir. 1989)("reliance upon a mere expression of future intention cannot be 'reasonable', because such expressions do not constitute a sufficiently definite promise."); *Corum v. Farm Credit Services*, 628 F. Supp. 707, 715-716  (D. Minn. 1986)(general statements concerning permanent employment insufficient basis on which to ground promissory estoppel).

A "promise must be definite, as reliance on an indefinite promise is not reasonable. . . . while a promise need not be as specific and definite as a contract, it must still be a promise with definite terms on which the promisor would expect the promisee to rely." *In re U.S. Office Products Co. Securities Litig.,* 251 F. Supp.2d 58, 73 (D.D.C. 2003)(citations omitted).

In the present case, Plaintiff has failed to demonstrate the existence of any promise that was made to him by MHG regarding neurosurgery practice at the hospital. Plaintiff has likewise failed to set forth the terms of the alleged oral contract entered into with MHG with sufficient specificity. Any such agreement or promise by MHG would still require definite terms upon which Plaintiff relied. *See id.* The record is insufficient to support Plaintiff's position on this issue.

### 2. Tortious Interference with Business Interest

In order to establish the tort of interference with a business interest, Plaintiff must establish the following elements: 1) that the acts were intentional and wilful; 2) that they were calculated to cause damage to the plaintiff in his lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and 4) that actual damages and loss resulted. *See Martin v. Memorial Hosp. at Gulfport,* 130 F.3d at 1151 (*citing Irby v. Citizens Nat'l Bank of Meridian,* 121 So.2d 118, 119 (1960)).

Defendants assert that because MHG had the statutory right under section

41-13-35(5)(g) of the Mississippi Code, to enter into an exclusive agreement with Dr. Doty, Plaintiff cannot, as a matter of law, establish that MHG entered into said agreement "without right or justifiable cause."  Defs.' Rebuttal to Pl.'s Resp. to Mtn. to Dismiss at p. 15.

Based on the legal authorities cited earlier, which state that the Mississippi Legislature contemplated anticompetitive conduct by authorizing hospitals to enter into exclusive contracts with single individuals, Plaintiff, as a matter of law, cannot maintain a tortious interference cause of action since he cannot show that any unlawful conduct occurred. *See Martin v. Memorial Hosp. at Gulfport,* 86 F.3d 1391, 1399 (5th Cir. 1996).

### III. CONCLUSION

The Court, after careful review and consideration of the evidence presented and the relevant legal authorities, and after considering the evidence in the light most favorable to the Plaintiff, including resolving all doubts in his favor, is compelled by the law to conclude that there is insufficient probative evidence demonstrating the existence of any fact question on the claims asserted by Plaintiff. Therefore, Defendants' Motion must be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, the Motion to Dismiss Complaint filed by Defendants Memorial Hospital and Dr. James R. Doty on March 21, 2006 [12-1], pursuant to FED. R. CIV. P. 12(b)(6) should be, and is, hereby **GRANTED,** and this case is hereby

**DISMISSED**, with each party to bear their respective costs.

**IT IS, FURTHER ORDERED AND ADJUDGED** that, the Complaint for Discovery set forth in ¶ 4 of the Complaint should be and is hereby **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 18th day of October, 2007.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE